# Bryant v. Bullock.

March 4, 1949.

Brown & Bird for appellant.

H. C. Kennedy for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

On October 13, 1937, E. M. Bryant purchased 316 acres of land in Pulaski County. The land was described in three tracts, and one of the tracts adjoined a tract of land purchased at about the same time by Delbert Bullock. The deed to Bullock purported to convey 40 acres. On May 27, 1947, Bryant instituted an action in equity against Bullock to quiet his title to 25 acres of land which he alleged Bullock was claiming. Bullock, in his answer, admitted that he claimed the 25 acres of land referred to in the petition, and alleged that it was included in the description of the land in his deed and that he was the owner and in possession of all the land described in his deed, including the land in controversy. It is alleged in the answer that the controversy is in regard to the true location of the dividing line between the two tracts of land, and that the correct line is as follows:

"Beginning at a white oak and hickory, thence N 9

E 87 poles to a white oak and poplar, thence N 77 W 34 poles to a post oak, thence N 56 W 28 poles to a white oak, thence S 38 W 41 poles to the beginning.''

The last call is evidently a typographical error, as the call in defendant's deed, given earlier in the answer is S 79 W 41 poles to the beginning, but this is immaterial since the only portion of the division line in dispute is ''begining at a white oak and hickory, thence N 9 E 87 poles to a white oak and poplar, thence N 77 W 34 poles to a post oak.'' The defendant prayed in his answer that the court adjudge the foregoing line to be the true division line between the two tracts, and that he be adjudged the owner of all the land on the north and northwest of that line. The plaintiff in a reply denied the defendant's claim of ownership and actual possession. The case was transferred to the common law docket, and upon the trial the jury returned a verdict for the defendant. From the judgment entered thereon the plaintiff has appealed.

The grounds urged for reversal of the judgment are alleged errors in two instructions. Instruction No. 1½ reads:

''If the jury believe from the evidence that the correct dividing line between the lands of the plaintiff and the defendant is as claimed by the defendant to-wit: Begining at a white oak thence N 79 E 41 poles to a white oak stump, thence S 56 E 28 poles to a post oak stump, thence S 77 E 62 poles to a white oak and poplar, thence S 9 W 98 poles to a white oak and hickory, then you will find for the defendant.''

Instruction No. 2 submitted the question of adverse possession. It is argued that Instruction No. 1½ is not supported by appellee's pleading in that the calls of the division line in the pleading and the instruction are different, and that the court erred in giving Instruction on No. 2 since adverse possession was not pleaded and the only issue was as to the correct location of the division line.

The court in giving Instruction No. 1½ reversed the calls as they appear in the deed and in appellee's pleading. The two lines in controversy appear in appellee's pleading as ''beginning at a white oak and hick-

ory, thence N 9 E 87 poles to a white oak and poplar, thence N 77 W 34 poles to a post oak," while in the instruction they are given as running from a post oak stump " S 77 E 62 poles to a white oak and poplar, thence S 9 W 98 poles to a white oak and hickory." In the instruction 28 poles were added to one line and 11 poles to the other. Two surveyors introduced by appellee testified that they surveyed his land. They started at a white oak tree, a recognized corner, and ran to a corner marked 5 on a map prepared by one of them. The next call was "S 50 E 54 poles to a white oak and hickory," and the corner is marked 6 on the map. This point was identified by a number of witnesses as the correct location of the corner. The next call was N 9 E 87 poles, but in order to close the survey it was necessary to add 11 poles to reach the next corner, marked 7 on the map. It was likewise necessary to add 28 poles to the next call, which read N 77 W 34 poles in order to close the survey and to reach the post oak, a recognized corner, marked 8 on the map. The two surveyors testified that it was proper practice to extend the two lines to the point where they intersected in order to close the survey. The undisputed evidence shows that an old fence stands on the extended portions of the two lines, and that a fence has stood on the line from 8 to 7 and that part of 7 to 6 in dispute for more than 50 years. Under the circumstances, Instruction No. 1½ was not improper.

There is no merit in appellant's objection to the instruction on adverse possession. The appellee alleged in his answer that he was the owner and in possession of the land in controversy. A party may prove title by adverse possession under a general allegation of ownership, although adverse possession has not been specifically pleaded. Price v. Shadoan, 298 Ky. 828, 184 S.W.2d 237; Conyer's Adm'x v. Magee, 294 Ky. 382, 171 S.W. 450. Furthermore, it was stipulated at the beginning of the trial that the questions involved were "the question of the location of the line between the plaintiff and the defendant, and the question of adverse possession and champerty." Practically all of the proof was to the effect that appellee and his predecessors in title had been in the undisputed and uninterrupted possession of the land in controversy for more than 50 years.

The judgment is affirmed.